St. Louis Southwestern Railway Company of Texas v. Charlie Cleland.

Decided April 16, 1908.

**1.—Negligence—Defects in Track—Switching Cars.**

Evidence in case of a brakeman falling under moving cars in switching by catching his foot under a projecting splinter of a cross tie in the station yards of a railway held sufficient to support a recovery for negligence.

**2.—Charge.**

The use of the words "if you so find," in applying the law to the facts by instructions to the jury, can not be taken as intimating that in the opinion of the court the evidence established the existence of such facts.

**3.—Charge—Master and Servant.**

The uncontroverted evidence showing that a certain employe, a section foreman, was charged with the maintenance of defendant's track at the point where defects therein caused injury to another, it was not improper to charge that defendant was liable for injury caused by his negligence in maintaining it.

**4.—Damages—Future Mental Suffering.**

Future mental suffering was properly submitted as an element of damages in case of a brakeman whose injuries by defendant's negligence resulted in the amputation of both legs. There was no need of evidence of a fact necessarily resulting from such facts proved.

**5.—Assumed Risk—Moving Cars.**

Evidence considered and held to warrant the refusal of a charge that plaintiff, injured while attempting to cross the track in front of moving cars and acting in an emergency for the protection of defendant's property, assumed the risk of injury, the question of his contributory negligence in so doing having been properly submitted.

**6.—Requested Instructions.**

It is not error to refuse a requested charge substantially covered by instructions already given.

**7.—Evidence—Rules of Employment—Acting in an Emergency.**

A rule of a railway company that, "in case of danger to the company's

property employees must unite to protect it," was admissible in .evidence as bearing on the conduct of a brakeman injured by falling under moving cars, in the endeavor to catch and check cars switched by another train crew which were about to escape down grade and threatening damage.

**8.—Damages—Personal Injury.**

A recovery of $22,500, sustained as not excessive, in case of a brakeman 24 years old, suffering the loss of both legs.

**9.—Master and Servant—Duty to Inspect.**

A charge that it was not the duty of a railway brakeman to inspect the track for defects was proper; and if its qualification as to the effect of obvious defects was desired a special instruction thereon should have been requested.

**10.—Charge—Assuming Fact.**

Instructions considered and held not to assume the existence of defects in the defendant's track.

Appeal from the District Court of Titus County. Tried below before Hon. P. A. Turner.

*E. B. Perkins* and *Glass, Estes & King,* for appellant.—It was error for the court to single out one particular employe of appellant and instruct the jury to find for appellee, if they believed from the evidence that he, the particular employe, was guilty of negligence. Railway Co. v. Harvey, 27 S. W., 423; Medlin v. Wilkins, 60 Texas, 409; Beaumont Past. Co. v. Preston, 65 Texas, 448; Stockburg v. Swan, 85 Texas, 563; Western U. Tel. Co. v. May, 8 Texas Civ. App., 176; Willoughby v. Townsend, 45 S. W., 62.

Under the evidence in this case it was error for the court to refuse the requested special charge telling the jury that if they believed that the plaintiff, knowing of the presence and the approach of a fast moving boxcar, attempted to run across the track immediately in front and within six or eight feet of it, and that an ordinarily prudent person would not have done so, and that that caused or contributed to cause his injury, he could not recover. Railway Co. v. Rose, 93 S. W., 1105; Railway Co. v. Mangham, 95 Texas, 413; Railway Co. v. McGlamory, 89 Texas, 637; Railway Co. v. Rogers, 91 Texas, 52; Railway Co. v. Dean, 76 Texas, 73; Bennett v. St. Louis S. W. Ry. Co., 36 Texas Civ. App., 459.

A rule of a railway company, to the effect that when the company's property is in danger, the employes must unite to protect it, does not justify an employe of the railway company to expose himself to danger and risks that an ordinary prudent person, situated as he was, would not, and the jury should be so instructed. Brown v. Bacon, 63 Texas, 595.

Appellee was guilty of contributory negligence in undertaking to cross the railroad track immediately in front of a rapidly moving boxcar, which he knew was detached and moving at a high rate of speed, the uncontradicted evidence showing that he undertook to cross within a few feet of said car, and undertook to run in ahead of it, instead of crossing the track behind it. Railway Co. v. Dean, 76 Texas, 73; Bennett v. St. Louis S. W. Ry. Co., 36 Texas Civ. App., 459.

It was error to instruct the jury that it should find the appellant

guilty of negligence if it found that the single employe had failed in the performance of his duty in exercising ordinary care to maintain the track in a reasonably safe condition. Altgelt v. Brister, 57 Texas, 432; Macon v. Randle, 66 Texas, 282; Stooksbury v. Swan, 85 Texas, 563; Davis v. Wallingford, 88 Texas, 624; Biering v. Bank, 69 Texas, 599.

*Sam Snodgrass, R. E. Davenport, Ralston & Ward* and *Johnson & Edwards,* for appellee.—The instruction criticised fairly and clearly submits for decision by the jury issues of fact which, if found for plaintiff, would unquestionably entitle him to recover. Railway Co. v. Lankford, 88 Texas, 499; Railway Co. v. Lehmberg, 75 Texas, 61, 66; Railway Co. v. Pettis, 69 Texas, 689, 692; Galveston, H. & S. A. Ry. Co. v. Parvin, 27 Texas Civ. App., 60; Galveston, H. & S. A. Ry. Co. v. Lynch, 22 Texas Civ. App., 336; Railway Co. v. Bell, 58 S. W., 147, 149; Willoughby v. Townsend, 18 Texas Civ. App., 724; Railway Co. v. Waldo, 32 S. W., 783, 785; Railway Co. v. Blan, 62 S. W., 553, 554; Railway Co. v. Summers, 49 S. W., 1106, 1107; Martin v. Railway Co., 56 S. W., 1011.

It was defendant's duty to exercise ordinary care to maintain its tracks in condition reasonably safe for its brakeman, and it necessarily vested that duty in employes; if its employe, whose duty it was to maintain the track at the time and place of the injury, failed to exercise ordinary care to maintain it in a condition reasonably safe for plaintiff, this was the negligence of defendant. The evidence disclosed the particular employe in whom defendant had reposed the duty to keep up and maintain its track at the time and place in question; it was onerous on the plaintiff, and affords appellant no possible ground of complaint, that the charge conditioned a recovery by plaintiff upon the jury finding, inter alia, that this particular employe negligently failed to maintain the track at the place of the injury in a reasonably safe condition. Railway Co. v. Farmer, 73 Texas, 85, 88; Railway Co. v. Pettis, 69 Texas, 689; Railway Co. v. Kirk, 62 Texas, 227, 233; Railway Co. v. Bond, 20 S. W. Rep., 930; Cook v. Navigation Co., 76 Texas, 357-358; Railway Co. v. Rodgers, 89 Texas, 680-681.

It will be presumed that the jurors had ordinary sense, or at least some sense, and that they were not influenced in any degree to determine the issues of fact in plaintiff's favor by the information that the charge, which fully and fairly stated the law of the case, was requested by his attorneys. Sayles' Civil Statutes, art. 1319; Railway Co. v. Muschamp, 90 S. W., 706, 707; W. U. Tel. Co. v. Motley, 87 Texas, 40; Knittel v. Schmidt, 16 Texas Civ. App., 7; Mexican Nat. Ry. Co. v. Mussette, 7 Texas Civ. App., 169.

Plaintiff's starting across the track too close to the approaching car, if he did so, was not necessarily a proximate contributing cause of the injury, since he would certainly have crossed the track safely but for the protruding tie, and could not foresee that defendant's negligence would catch his foot and throw him in front of the car. In order to preclude recovery, the negligence of a plaintiff must proximately contribute to his injury. Railway Co. v. Ormond, 64 Texas, 489; 1 Thompson on Neg., secs. 46, 169, 216, 219; Railway Co. v. Hoard, 90

S. W., 143; International & G. N. Ry. Co. v. Culpepper, 19 Texas Civ. App., 182; Jones v. George, 61 Texas, 346; Railway Co. v. Bigham, 90 Texas, 225-228; Hilje v. Hettich, 95 Texas, 321, 326, 327; Railway Co. v. Callaghan, 56 Fed., 993.

Defendant's special charge was properly refused, because insofar as it was correct its substance was fully and fairly stated in the charge which was given, and because by reiteration it would have imparted prejudicial emphasis and prominence to defendant's claim that plaintiff was guilty of contributory negligence in attempting to cross the track ahead of the approaching car. Railway Co. v. Kelley, 98 Texas, 135; Redmond v. Cotton Mills, 100 S. W., 187; Railway Co. v. Rutland, 101 S. W., 532-533; Power Co. v. Hooper, 102 S. W., 133, 134; Traction Co. v. Henry, 99 S. W., 1032; Foundry Co. v. Drish, 85 S. W., 440, 442; Adams v. Weakley, 80 S. W., 411; Cross v. Kennedy, 66 S. W., 318, 319; Hayes v. Hayes, 66 Texas, 606, 609; Traylor v. Townsend, 61 Texas, 144, 147; Powell v. Messer, 18 Texas, 405-406; Railway Co. v. McGlamory, 89 Texas, 639; Dublin Oil Co. v. Jarrard, 91 Texas, 292-293; Railway Co. v. Shieder, 88 Texas, 152, 167; Railway Co. v. Carter, 95 Texas, 472-473, 485-486; Mitchell v. Mitchell, 80 Texas, 112-113; Lumsden v. Railway Co., 28 Texas Civ. App., 225; Kershner v. Lattimer, 64 S. W., 237, 238; White v. Railway Co., 46 S. W., 382, 385; Lee v. Yandell, 69 Texas, 34, 37.

Plaintiff was entitled to have the jury, in determining whether a person of ordinary prudence in the same circumstances as he was would have acted as he did, give such weight as they deemed proper to this rule and to the influence which it may have exerted over plaintiff in the exigency of the situation. And defendant's objection to the admission of the rule in evidence was properly overruled. Railway Co. v. Leighty, 88 Texas, 606; Railway Co. v. Adams, 94 Texas, 100, 106; Railway Co. v. Gormley, 91 Texas, 393, 401; Pilkerton v. Railway Co., 70 Texas, 230.

The amount of the verdict, $22,500, is small compensation to appellee for the loss of both his legs, his ruined life, his disfigurement, his helpless and dependent condition, his great physical agony, the excruciating mental suffering which he has endured and must always endure. Gulf, C. & S. F. Ry. Co. v. Shelton, 30 Texas Civ. App., 72, verdict for $35,000; Railway Co. v. Kelly, 80 S. W., 1073, verdict for $30,000; Railway Co. v. Nass, 57 S. W., 910, verdict for $20,000; International & G. N. Ry. Co. v. Moynahan, 76 S. W., 803, 33 Texas Civ. App., 302, verdict for $20,000; St. Louis S. W. Ry. Co. v. Pope, 43 Texas Civ. App., 616, verdict for $20,000; Williamson v. Railway Co., 53 App. Div. (N. Y.), 399, verdict for $22,500; Railway Co. v. Younger, 90 Texas, 390-391; Lipscomb v. Railway Co., 95 Texas, 6, 21; Railway Co. v. Rains, 40 S. W., 635, 636; Tyler S. E. Ry. Co. v. Rasberry, 13 Texas Civ. App., 185; Railway Co. v. Weaver, 41 S. W., 847; Galveston, H. & S. A. Ry. Co. v. Cody, 20 Texas Civ. App., 520.

LEVY, ASSOCIATE JUSTICE.—By his petition the appellee claimed that in serving the appellant company in the capacity of a brakeman, and while in the performance of his duties as such brakeman he sus-

tained serious personal injuries occurring to him by being run over by a freight car being operated by the appellant company on its track at Mt. Vernon, Texas, alleged to have been caused by his being thrown down on the rail of the track through the negligence of the company in having and permitting to remain in the track a defective crosstie with a portion of the tie between the rails protruding above the surface of the tie and the track. The appellant answered by general denial, a plea of assumed risk, and contributory negligence.

The case was tried to a jury, and a verdict was returned in favor of the appellee for $22,500, and in accordance with the verdict a judgment was entered for the appellee, from which judgment the appellant company has brought the case to this court on appeal and seeks to have same revised for the errors assigned.

The evidence in the record substantially shows, and we make the findings of fact, that in May, 1905, and at the time of his injury, the appellee was in the employ of the appellant as a brakeman on a freight train. There was maintained by the appellant, and used for the operation of its trains at Mt. Vernon, Texas, a main line track, a house track, and a parallel passing track. The passing track is on the south side, and the house track is on the north side, of the main line track; the three extending east and west. The east junction of the passing track with the main line track is near the west side of Pittsburg Street crossing, and the east junction of the house track with the main line track is some 200 feet further west. The house track, for some several hundred feet and to its junction with the main line track, and also the main line track from that point, are on a steep or very much of a down grade toward the east. On the occasion of the injury appellant's eastbound freight train, on which the appellee was serving as a brakeman, was on the passing track; another freight train, westbound, was on the house track; and a string of seven or eight boxcars coupled together were standing on the house track east of this other freight train and at about the summit of the grade. The engine of the appellee's train moved forward to the main line track and then back along the main track to the house track, and took two of the boxcars from this string of seven or eight boxcars standing on the house track, which it was desired to place in and to become a part of the appellee's train. Taking these two boxcars from the string of boxcars, the engine proceeded with them upon the main track east of the passing track junction and then proceeded to shove or "kick" these two boxcars on to the passing track by backing the engine against and with them. The appellee was at this time standing on the south side of the passing track and at the switch, standing about or very near the west edge of Pittsburg Street crossing, operating the switch. At this time also the other westbound freight train, which was standing on the house track, backed against the remaining string of boxcars on the house track from which the two boxcars had just been detached by the engine of the appellee's train, and started them to rolling down the grade towards the main line track with increasing speed and with no person on them. It was proven that if these boxcars continued to roll with speed gaining, and were not stopped, they would run out from this house track upon the main line track and

would "side swipe" the engine of the appellee's train, or would continue to roll east down the grade of the main line track. Just before the leading boxcar of the two boxcars being shoved in on the passing track reached the switchstand, where the appellee was, he saw this remaining string of cars running down the house track with no one on them toward the engine of his train, and he at once started running to reach and stop them with the brakes; he started slightly ahead of the two boxcars mentioned, frequently glancing back at the two boxcars, and gaining distance ahead of them as he ran. Upon reaching a point where he must cross the passing track to reach, by the nearest route, the other rolling boxcars which were still on the house track, and being at the time about twenty feet ahead of the leading car of the two boxcars behind him, he crossed over the ends of the ties and the south rail of the track to the middle of the passing track, and was running up and diagonally across the track directly towards the rolling cars on the house track, when he was suddenly thrown headlong up and across the track, his breast striking the north rail of the passing track. He made efforts to flounder himself off the track; but the wheel of the leading boxcar of the two boxcars on the passing track caught him and crushed both his legs, nearly severing one near the hip joint and the other just below the knee, necessitating the amputation of both legs. There was a brakeman upon the two boxcars on the passing track, but none upon the other rolling boxcars on the house track; but a brakeman of the westbound freight train was at the same time pursuing the rolling boxcars on the house track to catch them and stop them, but the rolling cars were between the appellee and this brakeman, obscuring their view of each other, and the appellee could not know that any other person was trying to catch them or stop the cars. As bearing upon his conduct, the following existing rule of the appellant in force at the time was offered by the appellee: "In case of danger to the company's property employes must unite to protect it." The evidence is conflicting as to the distance the two boxcars on the passing track were from the appellee at the time and moment he attempted to diagonally cross the track. According to the testimony of the appellee and his witnesses, at the time he undertook to cross the track the boxcars mentioned were twenty or twenty-five feet from him. According to testimony offered by the appellant the boxcars were about six feet from the appellee at the time. We assume the truth of the general finding involved in the verdict of the jury on this phase of the evidence, and adopt the finding in this respect that at the time the appellee attempted to cross the passing track the leading boxcar was twenty or twenty-five feet from him.

The great preponderance of the evidence in the record clearly and practically established, and we so find and conclude, that appellee did not stumble or slip or strike his foot on the ends of the ties or the rails when crossing on to the passing track, but that he stumbled and was thrown down on the track after he had gotten upon the track and between the rails, and that he stumbled on some object on the track, and fell while running up and diagonally across the track in a northwesterly direction. The witnesses testifying for the appellee

upon this point of fact were eye witnesses, looking at appellee before and at the time he fell, and were very positive that he got upon the track clear footed and first stumbled only against some object on the track while he was running between the rails up and across the track in the direction mentioned. We conclude that the appellee, in crossing the passing track, was running across the same diagonally, and not directly up the track, and had taken two steps on the track in a diagonal direction across the same, and that in making the third step in this course on the track, nearer the outer or north rail, was suddenly and immediately thrown down flat and headlong upon the track, with his breast across the north rail, his head and shoulders extending from and outward beyond the rail. In this passing track there was placed therein by the appellant a crosstie broken and with a sliver protruding up from it and pointing to the north at an upward angle, as a witness says, of thirty degrees; the sliver was about eight inches long from where it began to rise, beneath the tie, to its point, and its point was the length of a finger, or three to four inches above the tie; the sliver was caused by the tie being broken, and was open and grew thicker from the point back toward the tie. The sliver was wholly exposed above the tie and the dirt, and the space between the sliver and the tie was open and not filled with dirt. It was proven that in the vicinity of the place where the injury occurred the track was surfaced and there was nothing between the rails in the track to cause a person to stumble or to fall, or in which a person's foot could have hung, except the defective tie. Appellee, in his evidence, testified that this defective crosstie was in the track at the place where he was injured, and that in crossing the track his foot caught under or struck against the protruding portion of this tie and he was thus thrown upon the track and caused to be run over and injured by the wheel of the car. The evidence in the record is sharply conflicting as to whether this tie was located at the place of the injury or distant therefrom, and as to whether this tie caused the fall. The evidence is abundantly sufficient to show that the sliver in the tie was sufficient to cause the fall, if the tie was situated in the track at the place where the appellee was injured. This latter point of evidence is very much in conflict. Appellee's witnesses make likely and reasonably certain that this tie was at the place of injury and caused the fall; while the evidence of the appellant goes toward showing the tie to be between thirty to forty feet away from the place of the injury. The jury in passing upon the conflict doubtless was impressed with the more certain idea of the appellee's witnesses as to its location with reference to the point of injury; they were eye witnesses. In their settlement of this conflict we assume the truth of their finding against the appellant's contention, it being a question within the province of the jury. There is evidence sufficient to support the finding that this crosstie caused the appellee to fall and be injured. The appellee's *res gestae* declaration, "I was trying to stop some runaway cars, and hung my foot under something and fell," has a stronger bearing upon the solution of this fact in appellee's favor in view of the undisputed evidence that the track where the injury occurred was surfaced, and there was nothing between the rails that could reasonably have caused him to

fall except this slivered crosstie. These tracks were in the company's yards at Mt. Vernon; and it was proven that trainmen in the yard, and about the switches and side tracks, in yards like that at Mt. Vernon, have frequent occasion to walk across and along the tracks in the performance of their duty. It was proven that the track in charge and keeping of appellant's section foreman, Milligan, included the yards and the passing track in question, and that it was his duty to maintain the passing track in question, keep it in repair, and to examine it for, and take out, broken ties; that the section foreman had not worked upon or inspected the track where the appellee was injured, within three or four months before the injury; that it was his duty to maintain and keep up the tracks in the yards in better condition than is necessary to maintain them out on the road, because trainmen had to use them frequently and pass along and across them in the yards.

We therefore find and conclude that the appellant company was guilty of negligence, proximately causing the appellee's injury, and that the appellee was not guilty of contributory negligence.

(*After stating the facts.*)   It is complained in the first assignment of error that the court erred in that paragraph of its charge wherein it undertook to apply the law to the facts and evidence. The first insistence is that the charge is upon the weight of the evidence, and the use of the expression, "If you so find," and its repetition, suggested, and were reasonably calculated to lead the jury to believe that in the opinion of the court the evidence established the existence of the facts which the jury were to pass upon.

The office of an instruction to the jury is to explain the issues, and to declare what rules of law will apply to any state of facts which may be found on the evidence. Instructions are predicated upon the supposition that the jury finds certain facts to be proved or disproved. To accomplish the purpose of an instruction the formal words, "If you shall believe from the evidence," or, "If you shall find from the evidence," and the like, are employed in written instructions by trial courts to direct and convey to the minds of the jury that they are to found their findings on the particular evidence of the case, and to require them to directly regard the testimony for such purposes. The expression, "If you so find," as used in this charge, is likewise a formal use of words obviously intended and meaning to direct and require the attention of the jury to the evidence tending to prove or disprove the particular facts. The charge as formed with these words could not fairly be construed as intimating or as reasonably calculated to lead the jury to believe that there was an opinion of the court as to the existence of certain facts, or the relative weight and value of the evidence, upon any issue. The sentence "if you so find that" could only have been reasonably interpreted by the jury in this case to refer to and mean "and if you find from a preponderance of the evidence that"—"plaintiff was not guilty of contributory negligence, and that his injuries were not the result of any risks which he assumed, as above stated, then you will find for the plaintiff." Neither do we think the charge was upon the weight of the evidence, nor could have the

effect of informing the jury that appellee was not guilty of contributory negligence.

The second objection urged to the charge under this assignment is that it singled out one particular employe of the appellant and instructed the jury to find for the appellee if that particular employe was guilty of negligence. The portion of the charge, so far as is necessary to state, reads: "If you find from a preponderance of the evidence that there was a crosstie in the track at the place where the plaintiff was injured, with a portion of the same protruding above the surface of the tie and track; and if you so find that such crosstie was dangerous and not reasonably safe to the plaintiff while in the performance of his duty as brakeman; and if you so find that the employe of defendant, whose duty it was to maintain the track at that place, permitted such tie to remain in the track, and that in permitting the same to remain in the track he was guilty of negligence; if you so find that but for such protruding portion of the tie, if any, he would not have fallen or been injured; and if you so find that his injuries were the direct and proximate result of such negligence, if any, in permitting such tie to remain in the track, if you find it was so permitted to remain—.". The charge required the jury, before they could find for the appellee, to find from a preponderance of the testimony that the particular employe of appellant whose duty it was to maintain the track at the place of the injury permitted the broken tie in question to remain in the track at that place, and that he was guilty of negligence in so doing. In this connection the evidence showed: J. H. Milligan testified, that at the time of and for two years before the injury he was the section foreman in the employ of the appellant; that the track in his charge and keeping as such section foreman included the yards and the passing track in question at Mt. Vernon; that it was his duty to maintain the passing track in question, keep it in repair, and to examine it for and to take out broken ties; that he had not worked upon or inspected the track where the appellee was injured, within three or four months before the injury; that he had not observed the tie in the track before the injury; and that if he had observed it there it would have been his duty to remove it, and that it was his duty to keep up and maintain the tracks in the yards in better condition than it was necessary to maintain them out on the road, because the trainmen had to use them frequently and pass along and across them in the yards. The petition expressly alleged that while plaintiff was crossing the track, "and was on the track, in the act of crossing over it, his toe and foot caught upon and against and under a crosstie and protruding portion of a crosstie which defendant negligently left and permitted to be exposed and to protrude above the surface of the ground and ties, which caused plaintiff to fall and threw him down upon the track and on the rail of the track." The case was not tried upon any other ground of negligence, and was prosecuted and defended upon this particular ground. Bearing in mind the particular ground of negligence set forth in the petition, and that the evidence clearly and indisputably showed that the particular section foreman was by the appellant charged with and intrusted with the performance of the duty of maintaining the particular track in ques-

tion, and keeping it in repair, and examining it for and to' take out broken ties, we do not think the charge is subject to the objection urged. It was not shown that it was not the entire duty of this section foreman to maintain, look after, and repair this particular track. Under the pleading and evidence the court was fully warranted in assuming as a proven fact that this particular section foreman, or employe, of appellant was charged with maintaining the track at this particular place, and to tell the jury that this section foreman was "the employe whose duty it was to maintain the track at that place." In this view the combination of facts plead and proved, and all that were necessary to liability and recovery, were submitted to the jury, and none omitted. The issue was sufficiently submitted and proved. Railway v. Kirk, 62 Texas, 227. It is a settled doctrine in this State that "it is the duty of the railway company to furnish reasonably safe tracks and machinery, and it is responsible to its servants for the neglect of this duty on the part of such servants or agents as it may intrust with its performance." Galveston, H. & S. A. Ry. v. Farmer, 73 Texas, 85; Missouri Pac. Ry. v. Bond, 2 Texas Civ. App., 104; 1 Thompson on Negligence, secs. 532, 533.

It is complained in the second assignment of the charge authorizing a recovery for mental pain appellee will endure in the future, because there was no evidence that he will suffer such mental pain in the future.

The evidence authorized the submission of the issue as to whether appellee would suffer mental pain in the future. The evidence showed that when appellee was injured he was an active, vigorous young man, hardly twenty-four years of age, regularly earning lucrative wages by his labor; that in the accident both his legs were so crushed that they had to be amputated, and that he had been rendered a helpless cripple for life, wholly unable to perform any manual labor. The jury would be fully warranted in presuming that mental pain would be the natural consequence of such injury. "There can be no doubt that the loss of the plaintiff's limbs would naturally cause mortification and anguish on the part of the plaintiff, and it is also quite certain that he would be to a considerable extent an object of curiosity and to the thoughtless and unfeeling an object of ridicule." Heddles v. Chicago & N. W. Ry., 46 N. W., 115. "And we understand that this mental suffering may be, in part at least, the result of comparing their present wretched, dependent condition and hopeless future with the bright, happy and independent life of which they were deprived by the injury, as well as the contemplation of the fact that they must suffer from the effects of such injuries during the balance of their lives." Missouri, K. & T. Ry. v. Miller, 25 Texas Civ. App., 460. It is not required that proof be made of a fact necessarily resulting from facts proved. Texas & Pac. Ry. v. Curry, 64 Texas, 85. Appellee's injuries were undoubtedly of a serious and permanent character. The rule is that where the petition alleges mental suffering direct evidence on that point is unnecessary where the injury appears to be serious and its effect permanent. City of San Antonio, v. Kreusel, 17 Texas Civ. App., 594.

It is complained in the third assignment of the concluding paragraph of the charge, "the above charges were asked by the attorneys

for the plaintiff, and are given you by the court as the law applicable to this case, and by which you will be governed." It is provided by statute that each party may present to the judge in writing such instructions as he desires to be given to the jury, and the judge may give and read to the jury such instructions. Article 1319, Rev. Stats. There is no prescribed way in which the judge is to announce to the jury that he gives them in charge a requested instruction in writing. It is the common everyday practice for the attorneys to sign the special charges and address them to the court as "special charge requested by defendant," or plaintiff, as the case might be; and as signed, for the judge to officially sign and read to the jury. In fact, it is required that counsel do sign the charges. Redus v. Burnett, 59 Texas, 576. Thus every special charge given in a way is an approval by the court of the proposition of the party offering same. Every ruling on an objection to evidence involves in a manner an approval or disapproval of the contention of a party to the case. But this practice and procedure is necessary to the trial of a case; and though all of it occurs in the presence and hearing of the jury, yet it is not in itself ground for complaint. The giving and marking the charge in question is the same permitted practice. It directs the jury with regard to the law that "it is given by the court as the law applicable to this case, and by which you will be governed." The charge in every respect correctly applies the law to the case. In the case of Scott v. Chicago, etc., Ry. Co., 24 N. W., 584, the defendant asked several instructions which were given by the court; and when the reading of each instruction was concluded, the court orally said: "This instruction is given at the request of the defendant;" and it was ruled that it was not reversible error. The presumption would obtain that the jury were desirous of obeying the law; and as the charge contained the full law of the case there is no reversible error in the matter complained of. The assignment is overruled.

The fourth assignment complains of the refusal to give a special charge to the effect that if appellee undertook to run across the railroad track six or eight feet in front of a moving boxcar, and he knew the boxcar was moving in his direction, and moving fast, and that caused or contributed to cause his injury, he could not recover. We do not think there was error in refusing the special charge. The evidence for appellee showed that he was twenty to twenty-five feet ahead of the boxcar when he attempted to cross the track; the evidence of appellant was that he was about six feet ahead when he attempted to cross the track. The main charge of the court explained to the jury "if the plaintiff either in attempting to cross the track in front of the moving car, or in the manner in which he attempted to cross the track, or in anything else that he did on the occasion in question, was guilty of contributory negligence (which term was before defined), then he can not recover; or if he failed to do anything for his own safety or protection which an ordinarily prudent person would have done under the same circumstances, then he can not recover." This charge of the court undertakes to apply the law to the very evidence adduced in support of the plea of contributory negligence. The substance of the special charge requested was fully and fairly stated in

the main charge. The main charge explained to the jury that "if in attempting to cross the track in front of the moving car" or "in the manner in which he attempted to cross the track" he was guilty of contributory negligence, he could not recover. The special charge means the same, and does not enlarge the idea or substance. The main charge involved and included all the evidence offered by appellant and appellee as to the distance appellee was from the moving car when he undertook to cross the track, and the manner in which he did so. The finding involved and required a consideration by the jury of all the particular evidence of distance of both appellant and appellee. This being true, the jury had presented for their determination the very facts constituting the defense of contributory negligence, and in a way that they could intelligently pass upon the same. Appellant's special charge singled out and stated and gave prominence to a particular portion of evidence introduced as tending to support its defense, and the refusal to give it did not deprive appellant of any right in this respect. Lumsden v. Chicago, R. I. & T. Ry., 28 Texas Civ. App., 225; Texas & N. O. Ry. Co. v. Kelly, 98 Texas, 123. We think the objection urged by appellee to the special charge is well taken in that it required the jury to find for the appellant in the event a person of ordinary prudence would not have attempted to cross the track so close to the car as the appellee did, whether or not that proximately contributed to the injury. The evidence shows without dispute that the car did not strike appellee nor cause him to fall. The sole cause of the injury was appellee's being thrown upon the track by the protruding sliver in the crosstie in the track. Appellee did not know of the protruding tie, nor could he have foreseen that his foot would strike a protruding tie in the track. The evidence, fairly construed, would conclusively show that appellee would have crossed the track but for the protruding tie between the rails. The car being so near when he fell rendered it impossible for him to turn aside or prevent the natural and probable result of being thrown by the defective tie in the track, negligently permitted to be there by the appellant. In this view of the record it could not reasonably be determined that in his starting across the track when the car was quite near, it would be accounted as negligence which proximately contributed to produce appellee's injuries. This special charge precluded a recovery whether or not that proximately contributed to the injury. International & G. N. Ry. v. Ormond, 64 Texas, 489, 1 Thompson on Neg., secs. 46, 216, 219; International & G. N. Ry. v. Culpepper, 19 Texas Civ. App., 182. The assignment is overruled.

The fifth assignment complains of the refusal to give a special charge. We do not think there was error. The substance of the special charge was fully and fairly stated in the court's charge, and it would have been reiteration of the instructions on the issue of contributory negligence to give the special charge.

The sixth and seventh assignments are considered together. For the purpose of showing that he was not acting without the scope of his duties, and as a circumstance as explanatory of his purpose, and conduct as bearing on his negligence *vel non*, the appellee offered in evidence, over the objection of appellant, an existing rule of appellant

in force and known to appellee, which reads: "Rule L.  In case of danger to the company's property employes must unite to protect it." The rule was limited to the purpose for which it was offered, and was not offered or used to show negligence of appellant company.  The evidence showed that a string of five .or six boxcars attached together and located on the house track were backed against and started to rolling down grade by the freight engine westbound, and as they rolled they were gaining speed, and if not stopped would roll out upon the main track and "side swipe" the engine on appellee's train, or roll on down the long grade of the main line.  No person was on the rolling cars.  Appellee, seeing the situation, at once started in that direction to catch and get upon and put the brakes upon the same to stop them, he being a brakeman.  Appellee had nothing to do with the moving of the cars, nor was he a member of that crew.  Appellee's effort to catch the cars was an effort to avert the threatening and impending danger of a collision or having loose cars upon a main line, and his injury was received in an effort, though not from these cars, to avert the danger and protect the property.  We think the evidence was admissible for the purpose offered.  The rule exerted an influence upon his conduct, and as bearing upon his negligence he could show that the sole purpose of his attempting to cross the track at the time of his injuries was in performance of duties required of him by appellant.  The exigency of the situation was shown, and by the rule he could show that he was acting within the scope of his duties, as he understood and construed the rule.  Not being a member of the crew of the other train, the rule had a bearing upon tending to show that at the time he attempted to cross the track he was not acting without the scope of his duties to appellant.  It rested upon him to show affirmatively that he was performing duties devolved upon him at the time of his injury. That there was immediate appearance of danger in permitting the loose cars to roll down the track, and that it was a duty expected of him to catch and put brakes on and stop them, are circumstances peculiarly and directly bearing upon his conduct at the time on the issue of his negligence.  All and entire the circumstances having relation to his acts, conduct and purpose at the time was proper testimony for the jury to consider in determining whether a person in the same circumstances as appellee would have acted as he did, and it was within the province of the jury to give such weight thereto as they deemed proper.  In the case of Louisville, N. A. & C. Ry. v. Frawley, 9 N. E., 594, the plaintiff offered in evidence the following rule of the company:

"All train employes while on duty are under the charge of the conductors of their respective trains."

In ruling upon the assignment objecting to the admission of the rule in evidence, the court says: "We think this rule was relevant for the purpose of showing that the plaintiff was in the proper discharge of his duty, and acting under the lawful authority of the defendant while attempting to make the coupling when he was injured."  If appellee in good faith construed the rule to have application to the situation he was endeavoring to relieve, it was a question for the jury under all the circumstances to say whether he was guilty of contributory negligence.  Texas & Pac. Ry. v. Leighty, 88 Texas, 604.  The charge

of the court told the jury in plain words that if in crossing, or in the manner of crossing the track, the appellee did not do or act as an ordinarily prudent person, he could not recover; or "if he failed to do anything for his own safety or protection which an ordinarily prudent person would have done under the same circumstances, then he can not recover." In the light of the charge this evidence could not reasonably have had the effect of impressing upon the minds of the jury an undue stringent and exacting rule against the company. The reasonableness of the rule was not in issue. The assignments are overruled.

The eighth assignment complains of the refusal to grant a new trial because the verdict is excessive. The evidence shows appellee to be twenty-four years old, with a long life expectancy, and he has suffered the loss of both of his legs; he is a helpless cripple for life, and has impaired capacity to earn a livelihood; his suffering was excruciating. The remuneration of his present employment was in evidence before the jury, and they considered that fact in estimating the amount of the damages; and appellant, as a wrongdoer, could at most claim no more than that in this respect. There is nothing in the record to show an unfair or undue conduct on the part of the jury. The amount is not excessive, considering the severity of the injury and its undoubted permanency. Gulf, C. & S. F. Ry. v. Shelton, 30 Texas Civ. App., 72; Texas & N. O. Ry. v. Kelly, 34 Texas Civ. App., 21; International & G. N. Ry. v. Moynahon, 33 Texas Civ. App., 302. The assignment is overruled.

The ninth assignment is to the effect that the verdict was contrary to, and not supported by the evidence. We think the evidence is sufficient to support the findings of the jury, and that the evidence warranted the finding that the broken tie in evidence threw appellee and caused him to be injured. The findings of fact herein are referred to, and the assignment is overruled. St. Louis, I. M. & S. Ry. v. Robbins, 21 S. W., 887; San Antonio & A. P. Ry. v. Brooking, 51 S. W., 537.

There was no error in refusing the special charge complained of in the tenth assignment. There was no evidence that he stumbled or slipped on the end of the crossties or rails. Richie testified: "As near as I could see he stepped his foot on the end of a tie or the rail and fell clear across the south rail on to the north rail with his face down." On cross-examination he was asked: "Q. You only saw him stumble?" "A. I saw him in the position of falling." The court charged the jury: "If you do not find that plaintiff struck his foot against a protruding portion of a tie between the rails of the track; or if you find that he fell at the time he was injured from any other cause, then you will find for the defendant." The substance of the special charge was sufficiently stated in the charge which was given, especially so in view of the evidence.

The eleventh assignment complains of the following portion of the court's charge:

"But in this connection you are instructed that it was not the duty of plaintiff to inspect the track of the defendant company, for defects therein, if any there was."

The objection is that it was calculated to lead the jury to believe that the appellee had the right to pass over the track without using his eyes for the purpose of seeing anything about its condition. There is no affirmative error in the charge; it is a proper and correct statement of the doctrine of substantive law, in the connection in which it was stated and submitted. It was the duty of the company to exercise ordinary care to keep the place of work in a reasonably safe condition, and it was not required that the appellee exercise care to see whether that duty had been performed; he assumes the risk arising from the master's failure to perform that duty only when he knows of such failure and the consequent danger, or the same are open to his observation in the performance of his duties. Galveston, H. & S. A. Ry. v. Brown, 33 Texas Civ. App., 589; Drake v. San Antonio & A. P. Ry., 99 Texas, 240. If there was an omission it was the office of a special charge to have supplied the omission. The assignment is overruled.

The twelfth assignment complains of a portion of the court's charge, on the ground that it assumes the existence of a protruding sliver on the crosstie. The charge was:

"In order for plaintiff's injuries to be the direct and proximate result of the protruding tie, if any there was remaining in the track, the evidence must show that plaintiff caught his foot under or against the same in crossing the track in the performance of his duty as brakeman, and that he was thereby caused to fall and be injured."

The assignment is overruled.

The thirteenth, fourteenth and fifteenth assignments are practically the same as the first. What we have said in passing upon the first assignment in effect disposes of these three assignments. It was the appellant's duty to exercise ordinary care to maintain its tracks in condition reasonably safe for its brakeman, and it necessarily vested that duty in employes; if its employe to whom the duty was entrusted to maintain the track at the time and place of the injury, failed to exercise ordinary care to maintain it in a reasonably safe condition for appellee to discharge his duties as brakeman, this was the negligence of appellant company. The evidence disclosed the particular employe in whom appellant had reposed the duty to keep up and maintain its track at the time and place in question, and that it was his particular duty in this respect as to this particular track at the time. The assignments are overruled.

There being no error in the record, the case is ordered affirmed.

*Affirmed.*

Writ of error refused.