**DALLAS RAILWAY & TERMINAL CO.,**
Appellant,

v.

Vernon A. GOSSETT et al., Appellees.

No. 3304.

Court of Civil Appeals of Texas.

Waco.

Dec. 1, 1955.

Rehearing Denied Dec. 22, 1955.

Burford, Ryburn, Hincks & Ford, Dallas, for appellant.

E. A. Cade, John C. Walvoord, Jr., James R. Ellis, W. H. Cathey, Dallas, for appellees.

McDONALD, Chief Justice.

. Plaintiff Mrs. Gladys Gossett sued defendant Railway & Terminal Company for damages for personal injuries sustained by her when defendant's bus on which she was a passenger came to a sudden stop, throwing her forward, causing her to strike her neck and shoulders against the coin box and iron rod supporting same. Defendant bus company, by third party complaint, complained of Mrs. Mary Sample, alleging that on the occasion in question Mrs. Sample made a sudden right-hand turn from the left side of the bus into the street directly in front of the bus; that in so doing she was guilty of various acts of negligence; which caused the bus to have to make the sudden stop; and that Mrs. Sample's acts and omissions constituted the sole proximate cause of plaintiff's injuries, or in the

alternative, a proximate cause thereof. Trial was to a jury which, in answer to special issues, found, 1) defendant bus company negligent; 2) plaintiff and Mrs. Sample not negligent; 3) and fixed plaintiff's damages at $2,500. The Trial Court rendered judgment on the verdict.

Defendant bus company appeals, seeking a reversal and a remand of the cause, contending that 1) The jury's answers to the special issues finding that Mrs. Sample a) did not fail to keep a proper lookout, b) did not turn her automobile to the right from the wrong lane, c) did not turn her automobile to the right when such movement could not be made with safety, d) did not fail to make her approach and turn as close as practicable to the righthand curb, are so contrary to the overwhelming preponderance of the evidence as to be manifestly unjust; 2) That the jury's finding that Olive Street had *not* been designated as a one-way street is so contrary to the overwhelming preponderance of the evidence as to be manifestly unjust—and that issues submitted conditional upon an affirmative answer to whether Olive Street had been designated as a one-way street should not have been so submitted; 3) That there is no evidence that plaintiff's ambulance expenses, hospital expenses, doctors' bills, medicine bills, doctors' bills for future, or medicine bills for the future were or are *reasonable*; 4) That defendant's first application for a continuance was improperly overruled; 5) That plaintiff's counsel misstated the court's charge in his argument to the jury. (Defendant does not complain of the jury's findings that it was guilty of various acts of negligence, nor of the findings of the jury that plaintiff was not guilty of contributory negligence.)

Defendant's first contention involves the sufficiency of the evidence to support the jury's findings that the third party defendant, Mrs. Sample, was not guilty of various acts of contributory negligence. The jury found that Mrs. Sample a) did not fail to keep a proper lookout; b) did not turn her automobile to the right from the wrong lane; c) did not turn to the right when such movement could not be made with safety; and d) did not fail to make her approach and turn as close as practicable to the right-hand curb.

A review of the record reflects that Mrs. Sample, prior to making the righthand turn, stopped at the red light, waited for it to change to green, looked over at the stopped bus, observed the driver thereof admitting passengers while watching the fare box. We think that the foregoing is sufficient to support the finding of the jury that Mrs. Sample did not fail to keep a proper lookout.

The record further discloses that the bus was stopped 22 feet from the Olive Street intersection, taking on passengers, when Mrs. Sample looked and when the light turned green; and thereafter proceeded to make her turn. Under this evidence the jury could find that Mrs. Sample did not turn from the wrong lane, that she made the turn when it could be made with safety, and that she made her turn as close as practicable to the right-hand curb.

Further, the defendant failed to tender any legal definition of "wrong lane" or "as close as practicable to the right-hand curb"; and none was submitted by the Trial Court. Therefore defendant cannot now be heard to complain on appeal of the findings made by the jury. See 41-A T. J. 675; Rule 277, Texas Rules of Civil Procedure; Hancock v. Sammons, Tex.Civ.App., 267 S.W. 2d 252 (Ref. N.R.E.)

To judge the credibility of the witnesses and the weight to be given their testimony is peculiarly the province of the jury. From the facts recited as well as from the record as a whole we cannot conclude that the jury's findings are so contrary to the overwhelming preponderance of the evidence as to be manifestly unjust. See: Lang v. Henderson, 147 Tex. 353, 215 S.W. 2d 585; Little Rock Furniture Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985; Dallas Railway & Terminal Co. v. Flowers, Tex. Civ.App., 284 S.W.2d 160.

■ Defendant's second contention is levelled at the jury's finding that Olive Street had not been *designated* as a one-way street. Defendant further contends that this issue should not have even been submitted since it was established by the uncontroverted evidence that it had been so designated. Defendant in its pleadings alleged that Olive Street had been duly and legally designated by the authorities of the City of Dallas as a one-way street. The only evidence in this record regarding this is found in the testimony of the witness Howe: "Q. I will ask you, in your capacity of a police officer, if you know whether or not Olive Street has been designated as a one-way street by the traffic authorities of the City of Dallas? A. I know the signs are there. Q. You know the signs are there? A. Yes Sir." The record contains other evidence which controverts even the fact that the signs were there; and at no time did the defendant ever introduce or prove in a proper manner any city ordinance of the City of Dallas.

A trial court will not take judicial notice of municipal ordinances, they must be alleged and proved like any other facts. 17 T.J. 181. The evidence before the court did not prove as a matter of law that Olive Street had been *legally designated* as a one-way street; the evidence tendered on this point was controverted; the jury found the street was not a one-way street, and we cannot say that the finding made by the jury—on this state of the record—was against the overwhelming preponderance of the evidence.

Since there was no proof by defendant that the City of Dallas had designated Olive Street as a one-way street—and since the matter went off on controverted testimony as to the existence of marker signs, the Trial Court did not err in submitting the question as it did, and in submitting subsequent issues of Mrs. Sample's proceeding onto Olive Street being negligence and a proximate cause of the collision, *conditional upon an affirmative* answer to whether Olive Street was a one-way street.

■ In its 3rd point defendant contends that there was no proof that the medical and hospital bills were reasonable. Defendant says that it has not assigned error that the services rendered Mrs. Gossett were not necessary, *but only absence of proof that such expenses were reasonable.*

The record reflects that plaintiff was injured by falling on defendant's bus when the bus made a sudden stop, and hit her neck and shoulders against the coin box and iron bar supporting same; plaintiff complained of pain and was obviously injured—and defendant's driver called an ambulance to take plaintiff to the Baylor Hospital. The charge for the ambulance trip was $5.00. At Baylor Hospital the doctors examined plaintiff in the emergency room and ordered X-rays taken of her neck and shoulder, and the charge for these X-rays was $39.50. She was examined and treated a number of times by Dr. Roberts, whose bill was $35. She was treated a number of times by Dr. Hanson, whose bill was $90; she paid Dr. Hanson $35 for additional treatments as she took them. The Dallas Osteopathic Clinic bill for X-rays was $45. Dr. Jackson's bill for a series of treatments was $127. Prescriptions cost between $10 and $15. All of the doctor bills were for daily visits for treatments. There were no operations or other large single items. The total medical expense was less than $390, which includes ambulance, medicines, X-rays, and examinations and treatments by four different doctors. The record reflects the exact amount of the charges for all of these medical services. The record reflects that plaintiff would be left with 5 to 10% disability involving the neck and would have to undertake some further treatment. The doctor testified that the most fortunate cases similar to plaintiff's would require treatment for a few weeks more—the more serious cases for weeks, months, or even years; the plaintiff's case was a mild average case between the two extremes.

Defendant itself concedes the proof of the necessity of the medical expenses in-

volved, in its brief; the record reflects substantial pain and injuries to plaintiff; and the actual amounts charged or paid for the specific medical services involved and treatments rendered. In fact, the treatments themselves are outlined as steam-pack treatments and intermittent traction treatments, which were described in detail. The fact that the services were necessary, that the charges were made or the amounts paid, is within themselves some evidence of the reasonableness thereof; as is the nature and extent of the medical services rendered; and the standing, experience, and ability of the doctors rendering such services and treatments, which in the instant case reflects to be of high standing, training and skill. It is our view that in this state of the record, from the nature of the injuries, the medical services rendered and the charges made therefor, and defendant's concession that same were necessary, that even though no expert testified directly that such bills were reasonable, we must conclude and the record as a whole justifies the inference that the medical expenses were reasonable. See: Sam v. Sullivan, Tex.Civ.App., 189 S.W.2d 69, W/E Ref. W.M.; Dillingham v. Currie, Tex.Civ.App., 92 S.W.2d 1122 (Er. Dis.); Edens-Birch Lumber Co. v. Wood, Tex.Civ.App., 139 S.W.2d 881 (Er. Dis.); Texas & P. Ry. Co. v. Gurian, Tex.Civ.App., 77 S.W.2d 274, W/E Dis.; Coca Cola Bottling Co. v. Krueger, Tex.Civ.App., 239 S.W.2d 669, 82 A.L.R. 1320; Little Rock Furniture Mfg. Co. v. Dunn, Tex.Civ.App., 218 S.W. 2d 527, points 16 and 17, affirmed 148 Tex. 197, 222 S.W.2d 985.

■ Defendant's 4th contention is levelled at the failure of the Trial Court to grant defendant's first motion for continuance. Defendant secured the promise of Dr. Hanson to testify on the trial of this case, and checked to see if he could be present on November 8th when the case was first set for trial. Dr. Hanson said he could be present. The case was not reached during the week of November 8th nor during the week of November 15th. Defendant again contacted Dr. Hanson, who said he would be available during the week of November 22nd. When the case was not reached during this week defendant checked with Dr. Hanson's office on November 29th and learned that Dr. Hanson was out of town and would be gone for a month. Defendant *then procured* the issuance of a subpoena for Dr. Hanson for the first time. Application for first continuance was made and the Trial Court overruled same and caused this case to go to trial on November 30th without Dr. Hanson's being available to testify for defendant.

We think defendant failed to show diligence in securing this testimony as is required by Rule 252, T.R.C.P. The defendant did not place the witness under subpoena, and in fact did not cause a subpoena to issue until it was learned the witness was out of town—and on the day before the trial.

If parties choose to forego their rights to place witnesses residing in the county of suit under subpoena to compel their attendance, and resort to other and less effective and less certain means of procuring testimony of material witnesses, they do so at their own risk and with foreknowledge that they may be put to trial without the benefit of that witness' testimony. Further, defendant's asking issuance of a subpoena at the eleventh hour which could not be served because the witness had left the county does not ease defendant's want of diligence, and we believe defendant's first motion for continuance was properly overruled. Fritsch v. J. M. English Truck Line, Inc., 151 Tex. 168, 246 S.W.2d 856.

■ Defendant's last point contends that plaintiff's counsel *"misstated"* the court's charge in argument to the jury. The court defined proximate cause in the usual manner and recited " * * * the result would have been foreseen by a person of *ordinary* care * * *". Plaintiff's counsel in argument to the jury referred to " * * * what a man would be doing under a *high* degree of care * * *". We do not believe the argument complained of was calculated to cause or did cause the rendition of an improper

'judgment in this case. See: Texas Employers Ins. Ass'n v. Crow, Tex.Civ.App., 218 S.W.2d 230, affirmed 148 Tex. 113, 221 S.W.2d 235, 10 A.L.R.2d 913.

All of defendant's points are overruled and the judgment of the Trial Court is affirmed.